The next case on the calendar, Paulson. Mr. Murray. Good morning. May it please the court. This case involves the boundaries between the National Labor Relations Act and the Railway Labor Act. Where that boundary is drawn can have significant practical consequences, because those statutes create different regimes for handling labor disputes. The Railway Labor Act treats the railroad industry and the airline industry differently to avoid strikes or other labor disturbances that could potentially disrupt interstate travel, transportation, and commerce. The underlying question in this appeal is whether the National Mediation Board, which is the agency responsible for administering the Railway Labor Act, has arbitrarily changed its standard for determining whether an employer is covered by the RLA as a derivative carrier. If so, then the district court in this decision arbitrarily abused its discretion in entering an injunction against prime flight that found that it was covered by the National Labor Relations Act, and ordering it to recognize and bargain with a union under that act. Why isn't the inquiry whether under a 10-J proceeding, the district court committed error? We've got Judge Friendly's opinion in Canard, which says the task of a district judge in a Section 10-J proceeding is twofold, requiring a determination whether there is reasonable cause to believe that unlabor practices have been committed, and if so, whether the requested relief is just and proper. He goes on to say that the question is whether the theories are so fatally flawed. That's just a different inquiry from an inquiry which would have the district judge in this case, in the posture of this case, make a determination whether the APA has been violated in terms of the process by which this shift has taken place. Under the reasonable cause inquiry, essentially what a court is called to do is to predict whether once the National Labor Relations Board issues its decision in the parallel unfair to labor practice charge proceedings, whether in those circumstances it's more likely than not that a court of appeals will affirm the Board's decision. Applying that inquiry here, in fact, the D.C. Circuit's decision in ABM Onsite provides a perfect illustration that is unlikely to occur here. That is the procedural posture that that case was in. It was an NLRB decision that had gone up to the court of appeals. The National Labor Relations Board had relied on the National Mediation Board's new standard, and in that case, the D.C. Circuit concluded that that was an arbitrary application of that standard. And if it didn't say it wasn't unreasonable, how can we say that the theory was fatally flawed? What I understood the D.C. Circuit to be doing was essentially to be undertaking an analysis about process and the way things were done. It didn't really go into whether substantively this could be done. That's correct, Your Honor, and the reason it didn't go into it substantively, and I think that's under the Chenery Doctrine, is that the court itself could not supply a reason that the agency itself had failed to provide. I believe, Your Honor, under the reasonable cause standard, which generally asks whether or not the board decision would likely be affirmed by a court of appeals, I think now we know the answer to that question. In this case, there is a parallel board proceeding, and ALJ has rendered a decision. The parties have filed their respective exceptions, or the prime flight has filed its exceptions to that decision, and it's now pending with the board, and it's in the same procedural posture that the ABM on-site case was in when it reached the D.C. Circuit. And I think the question that this court is asked to decide, is the board in that parallel proceeding, assuming that it, well, first of all, that's an assumption at this point that I'm not even sure that we can make, an assumption that the board would affirm the ALJ's or enforce the ALJ's decision in light of the board's decision, would a court of appeals be likely to in turn enforce that board decision? And the answer to that is no, and therefore, in reviewing whether or not the district court had reasonable cause, the answer to that is no. Reasonable cause to believe that ultimately that decision would be upheld by a court of appeals. It's also noteworthy, Your Honor, that I think considering where the ABM on-site case is, as well as two other cases that were similar, upon remand from the D.C. Circuit to the board, the board has elected to actually refer those matters to the mediation board, which is what the D.C. Circuit suggested it should have done at the outset. One of the options it could have followed at the outset, either the board could have attempted in that case to provide its own rationale for this change in the derivative carrier test, or it could have referred the matter to the mediation board, which it has now done. And so that matter is actually sitting with the mediation board in both the ABM on-site case and two other cases. And the question of whether it's the NMB or the NLRB that should have jurisdiction over this, how do you distinguish the Baggs, Inc. decision of the NMB? It seemed a very similar circumstance. I think it was the Seattle Airport. In the Baggs decision, Your Honor, that is one of the NMB decisions where the NMB has applied its new standard. So what we would argue is in this case, the district court should have applied the former standard prior to the 2013 change in the law, which now that change has been identified as arbitrary and capricious and not to have the effective law by the D.C. Circuit. The proper thing for the court to have done was to apply the former standard, and prior case law, including a case involving Prime Flight, demonstrates that under that prior standard, Prime Flight would be subject to the RLA. Your view is that there is no way of reading the district court's decision as in some way, shape, or form employing the prior six-factor test? The court does refer to the six factors. And in fact, I believe the region here continues to argue that the NMB has not changed the test. It's only adjusted the emphasis that it applies. I mean, if the district court had applied those factors, then at least the issue that you've raised with respect to jurisdiction would disappear. Yes, Your Honor. And I think that's illustrated by the prime . . . Either if there's a reasonable view or reading of the district court's opinion as in fact employing both the traditional test and what you describe as the post 2011 line of NMB cases with bags, then we could avoid this entire issue, could we not? If it's a conditional. Certainly, Your Honor. I think the court referred to the six factors. In fact, the NMB continues to refer to the six factors. It made findings, didn't it, on the fall of rumor factors? It made a number of findings. It made findings. Yes, Your Honor. What the NMB and the district court following those NMB decisions has done is in effect has applied just one of those factors. Personnel. Yes, Your Honor. And to the detriment, in fact, it appears to no longer matter what the other five factors are. So if a court appears to consider different factors, a number of factors, and focuses on one in particular, does that mean that it has not in some way, shape, or form employed a multi-factor test that just says, look, I think that this deserves a little bit more weight? I understand, Your Honor. I think the problem with the issue here is that there appear to be no decisions since the 2013 trilogy of cases from the NMB where the board or where the mediation board has found RLA jurisdiction over derivative carrier based on any of those other five factors having any impact at all. This is not to say that the mediation board, perhaps it could change the emphasis, but what the D.C. Circuit emphasizes is it needs to provide an explanation for that change, which is a change from prior practice, and that's what the key deficiency is here. You agreed in answer to Chief Judge Katzmann's questions that this is a different case. That is, the standard of review, we're reviewing a district court decision to reasonable cause standard and so on. Even on the jurisdictional issue? I think it is somewhat a different standard, although the standard here is really predicting how the other standard would apply. So it's really forecasting when that other standard is applied, the standard that was applied in the D.C. Circuit, when that's applied, what will the outcome be? Will the Court of Appeals be likely to uphold a board decision that applies that new rule? So really, this is a forecast, a prediction of how that standard would be. Yes, we're one step removed from it, but it's ultimately the same question. Did you make this argument before the district court? That is, did you ever raise the argument that it would be error if the district court applied the post-2011, 2013 line of NMB jurisdiction cases? Indirectly, Your Honor. We pointed to the prime flight case . . . We pointed to the prime flight case that was decided in 2007 and 2008 by both the NMB and by the board applying the former standard and saying that that is the standard that should apply here. But then there's got to be a second argument, and maybe this is what you mean by indirectly, that somehow that line of cases that broke away from the earlier 2007 prime flight decision was unreasoned and that they needed to provide some explanation. You didn't make that argument? That specific terminology? No. And I don't believe there's been any argument or suggestion of waiver in any of the briefing here, so we've not addressed that particular issue. But there has not been any argument of waiver in this case with respect to that point. Thank you. You'll have three minutes in rebuttal. May it please the Court, Jonathan Sotka for the NLRB. The interim bargaining order of prime flight is challenging here. It is vital to the preservation of the board's remedial authority and the vindication of the employees' Section 7 rights. Even with the improper bargaining limitation, the district court's bargaining order gets the parties to the table where the union can start addressing the issues confronting employees. Employees will see the union working for them and get the benefit of day-to-day . . . Could you address the jurisdiction issue? Certainly. As to the jurisdiction issue, we believe that a reasonable cause standard applies. One of the issues the employer raised was their contention that this is similar to prime flight, the 2008 case. But there are a number of differences between this case and that case. For instance, according to the six-factor test that the judge applied in this case . . . Your adversary says that Judge Kogan did not apply realistically the six-factor test and that instead he really applied the bag test, the personnel decision test. What's your response to that? I think it can be read both ways, but the argument . . . It certainly looks like he went through all the factors and applied them. Whether or not he applied the one over the other is unclear from the record. Do you concede that he seemed to focus very much on the personnel decision? I would concede that he focused very much on the personnel issue, but he certainly went through all the factors. He did not wave them away in the decision. Would it be correct to apply the bags test? Is that the test that currently is in effect? Right now, the board has, as mentioned by the employer, deferred the NMB standard back to the NMB. The employer is concerned that the board is going to . . . A court of appeals would never enforce the board's applying bags here is unwarranted since the board is not going to act here until it hears back from the NMB in those other cases. The standard is correct. It's a perfectly legitimate standard, and it would be very disruptive to labor relations for . . . Why shouldn't we wait then to decide this until after the NMB has made its decision? So there's always . . . In any interim relief, there's always the danger that the board or the courts will disagree with the regional director's determination. The issue is whether or not the regional director's theory . . . There's reasonable cause to believe his theory is correct. Here, the regional director's theory is based on four to five years of precedent, and there's no reason to think that that's going to change. That's great, except that the regional director just sent back to the NMB a decision on jurisdiction. So if the NMB says . . . I don't know how long these things take, but if it says or concludes that it has jurisdiction under the RLA and not the NLRB, then where are we? Then where would we be if we were here today right after that decision came down? If the NMB were to assert jurisdiction over prime flight in this case, the board would rescind its . . . The regional director would withdraw his complaint. Why should we do anything? Why should we do anything at this point? Why not just wait? The issue is here that because there's still reasonable cause to believe, the NMB is going to . . . The board will eventually assert jurisdiction over the employer here, and because there is irreparable harm to the employees . . . You're saying that if the NMB decision came down yesterday, so Wednesday, and we were here today, you would get up and say . . . And their decision was that the NMB has got . . . asserts jurisdiction, not the NLRB. You would get up, you'd be at that podium, and you would tell us, rescind the order. Is that correct? Well, that's . . . Yes? That would likely be correct. Technically, the board has its independent authority to assert jurisdiction. There's always the possibility the board might disagree with the NMB's decision, but realistically speaking, yes, the board would then defer to the NMB. Wouldn't it be in everyone's interest for this to be administratively . . . the administrative bodies to decide this expeditiously? It certainly is in . . . And then let us know where things stand. The problem is if that . . . if the courts . . . if the interim order is disrupted, the irreparable harm caused by the employer's refusal to bargain with the union will . . . it will be irreparable. There won't be . . . the eventual administrative process will be for naught. The employee support, as the Supreme Court noted in . . . For now, what's the status quo? The status quo is the parties are bargaining with this bargaining limitation. Is that what the NLRB is seeking? Eventually, yes. I know that those are cross-appealed, but for the most part . . . Yes. Is that what you want? Yes, but the problem . . . If we didn't decide this for a while and waited for the NMB, wouldn't that inure to your benefit? Oh, I see what you're saying. If we just hold the case in abeyance. Well, the problem is there is this bargaining limitation that we believe is detrimental to the efficacy of bargaining. The staffing limitation. The staffing limitation, yes. That we would prefer that the court render judgment on. Does that present a real impediment to the bargaining process, though? The parties would be in the best situation to discuss its actual effect on their bargaining, but just inherently speaking, it should cause impediments. Can you point to a specific statutory provision that supports you on this point that forbids a district court from including in its order a provision that bars the minimum shift requirements? Section 8D and Section 8A-5 of the Act have been interpreted by the Supreme Court and H.K. Porter to prevent any dabbling with the substance of bargaining. Essentially, despite the Board's wide remedial powers, and derivatively the district court's enforcement of the Act's purposes, the courts have interpreted the law to say that it is against the U.S. policy of the United States for a court or any sort of administrative body to come in and say what issues are and are not important, to essentially give an issue to one party or the other. That is a legal issue to bargain about. Literally, it's the district court weighing in on a particular issue, a bargaining issue. Yes. And on top of that, it's based on a fundamental misunderstanding of the facts. JetBlue does not come in and say you have to have this many people working this time at this place. JetBlue gives Prime Flight its flight schedules and then audits things like wheelchair wait times and things like that to make sure that Prime Flight isn't understaffing the contract. This is a very typical contractual arrangement and lots of unionized contractors are able to bargain about this without special exceptions. Could I just step back for a moment and could you help me understand the posture administratively as to what discussions, what proceedings are actually presently going on as to whether there should be a rescission of the policy? We heard from your adversary that in consequence of the D.C. Circuit's position, that at least as to that specific case or is there a rescission in policy underway and where does that stand? What's the process? In terms of the RLA? Yeah. And when can we know? And how do we send the message that we want to know? Right now, it's pending before the NMB. In not this case, but other cases, the board has referred this issue, the ABM issue, to the NMB. Notably, the district court did not pass judgment on the policy and there's no expectation that the NLRB or the NMB would change the policy. The NLRB certainly, in our opinion, we're not the board side, we're the general counsel side, but in our opinion, the board would not change the policy given that it's been in existence for these many years. The NMB, obviously we can't speak to. We're a different agency. We've asked them to move on expeditiously. They know that there are 10 J's involved in this issue, but that's the best we can do. We have no authority over them to move any faster than they're moving. So they make a decision, they tell you about it, and then you are likely to defer to the decision they would make? They will write an official opinion through a process in the RLA. They will write an official opinion to the board. The board will take that opinion and then apply it or in a very unlikely situation, not apply it. That is how that would work. Presumably for this case, if the NMB affirms its current policy with an explanation, the board will simply apply that to this case. If the NMB creates some brand new standard, there's a possibility the board would refer this case to them to apply their new standard. That's sort of the web of possible administrative actions. Maybe you answer this, but you have no real sense of the timing. None. It's a tiny agency. Union Council is actually an expert on the NMB. I think he might be able to better answer that question. Yes, my time is up. Good morning, Your Honors. To start with that question, right now all the members of the NMB's terms have expired. They remain in place until their successors are installed, but they're not there. The odds that the NMB can do anything quickly are, I think, approaching zero. The Airway case, which was one of the main cases that the NMB issued on this subject, was our case. It sat at the NMB for a year. That was when the NMB members were in place and functioning. I fear that any decision from the NMB will take quite a while. They, of course, have their own set of priorities, and their priorities do not necessarily... You see, at least my concern, that we issue a decision, let's say, in favor of the NLRB, and then there's a decision from the NMB asserting jurisdiction for itself. Right. That's an understandable concern, Your Honor, but one of the things that I think has been missed in the discussion so far is that the Court of Appeals in D.C. has affirmed jurisdiction in the Allied Aviation case came out after ABM on-site, did not say refer it to the NMB, did not say... Same posture as this case, that is, review of a district court decision? No, that was the same posture as ABM. It was a review of a board decision. And it affirmed the board's decision, finding jurisdiction over Allied Aviation, which happens to be the company that does all the board. NLRB had looked at the six factors sufficiently and affirmed jurisdiction. And the NLRB itself has, since the ABM remand, found NLRA jurisdiction in the Aviation International Services case out of Orlando, again a case involving fueling, and they issued a decision finding jurisdiction despite the employer arguing... Those cases are ones where it construed the decision as employing the traditional six-factor test. Well, in Allied Aviation... Allied Aviation, the D.C. Circuit said, yes, the board has referred to calling it the BAGS test, for instance, is a test that looks at all six factors. It prioritizes the personnel decisions, but if you look at, for instance, BAGS, what are the six factors? It looked at training, it looked at control of business operations, and it looked at the other factors, and it found that the company's argument was insufficient. So, for instance, in BAGS, it noted that a lot of the training was training mandated by the government. And it held there, as it has in other cases, that where training is mandated by the government, then the fact that the airline says, passes that on to the contractor is not jurisdictionally significant. So it examined these factors. It examined how much equipment was provided by the contractor and how much by the carrier. It examined the premises that were provided. All these factors are being looked at and have been throughout. It's just a question that now the board, the NMB and the NLRB following it, has finally given some structure and priority. Because prior to the BAGS test, if you will, this line of cases, you had a totality of circumstances, a list of factors that had no measuring stick and had no priority. And as courts have pointed out, in that kind of circumstance, it's just . . . I understand your discussion about, your argument about cases subsequent to ABM on-site service. But with respect to what happened in ABM on-site service, in terms of that posture, is your adversary correct that basically this has now been referred to the NMB? Yes, that is correct. And why is that? What is it that your understanding is, what is your understanding about what is expected of the NMB? Well, when cases are referred by the NLRB to the NMB, the NMB writes an advisory opinion. And it is true that the board has in the past accepted those advisory opinions. Although the board has reserved to itself the right, it says it does not automatically accept them. But it has quite a great majority of cases, if not always, accepted the advisory opinion. Let's say in the perfect world, in the perfect world, we would hear next week as to the NMB's advisory opinion, or the NLRB would hear. In that circumstance, wouldn't it make sense . . . I realize this is a hypothetical situation. It's not this situation, for the reasons that you described. Wouldn't it make sense for this court to wait? Well, I understand the considerations that would lead you in that direction. But one of the things I think has been missing from the discussion is, what did Congress mean when it adopted this statute, and would finding prime flight to be under the RLA, is it even consistent with the statute? Now, what you're faced in this circumstance is the reasonable cause standard. And as I think your questions have pointed out, neither ABM Onsite nor PrimeFlight has made any argument whatsoever that finding NLRA jurisdiction over PrimeFlight is inconsistent with the statute. But I would go beyond that and say, finding RLA jurisdiction over PrimeFlight is in fact inconsistent with the statute, and inconsistent with considerable body of Supreme Court and appellate court precedent, as we've argued in the brief, including, for instance, Dobbs Houses, a Sixth Circuit case, which is the only appellate case that has gotten into the contractor context. And Dobbs Houses looked at facts that show far more control than the carrier JetBlue has over PrimeFlight, and rejected RLA jurisdiction over Dobbs Houses, the in-flight caterer. Could I, I take your points on this, but could you just . . . I may have missed this in your explanation, in your recounting, and maybe your colleague would know more exactly. When, with respect to the D.C. Circuit case, the ABM case, the ABM Onsite case, when did the NLRB refer this to the NBD? NMB, Your Honor. I don't remember the date. It was, I think, a couple of months after the decision came down. I don't have that date. This would have been in 2017. It would have been this calendar year. I'm really not remembering the date, Your Honor. But my memory was a couple of months after the decision came down. But that is a very general memory. Can I ask your colleague, do you have that information? I'm not looking it up, but it's probably in the Employer Counsel's Notebook. So you can tell us. If I may, Your Honors, I'm happy to speak more about the jurisdictional issue if you have additional questions, but I would like to address the impact on the bargaining of either holding a decision in abeyance or . . . Okay. So we're bargaining. I think the bargaining is, in fact, in a state of suspended animation because I believe the company is just waiting for this decision in order to figure out whether it really has to bargain or not. They are coming to the table. They are making proposals. I'm not suggesting that they're not carrying out the form of bargaining, but I don't think they believe that they're going to have to deal with the union. And I think they believe that because they're hoping that you will dissolve the 10J and eliminate all bargaining. And as long as . . . Silence has a negative effect on . . . Absolutely. Absolutely, Your Honor. And just to go over the impact of the bargaining limitation, as the employers pointed out, 50% or more of the positions in this bargaining unit are what they refer to as non-static, meaning the hours and the schedules change. And one of the major issues right up there with anything else that we faced in organizing these workers and talking to them is particularly the wheelchair workers get their hours cut. And it is, you know, somebody's trying to make a living, they're trying to put together hours so they can pay their rent, and then their hours get cut. And we have complaints from our bargaining committee and other members, long-time senior employees get their hours cut, brand new employees come in, get fuller schedules. As the work goes up and down, there's not just the question of how many hours will be worked, but how many of those are going to be done by full-time jobs? How many on four-hour schedules? How many on six-hour schedules? These are all decisions Prime Flight makes that have an enormous impact on the bargaining unit, and therefore on the bargaining. What can we do about health care when we don't know who's a full-time employee and who isn't? One can hypothetically say, well, they should give health care to everybody, but that's not how the real world works. If we're actually reaching an agreement, it's going to have different health care terms and perhaps other terms for full-time employees and for part-time employees. Virtually every contract I'm familiar with works like that. How are we going to know who in this unit is full-time and part-time? How do we say to people, we, the union, are protecting your interest in this job because you can count on getting these hours? We're deprived of that, and it is, as I said, it's one of the main issues. We do bargaining surveys. We ask our members what's on their minds. We talk to people. This is what we hear just as much as anything else, just as much as wages, just as much as any other issue and more than the great majority of issues. Very helpful. I have a question, and if you can answer, maybe your colleague can answer. Subsequent to the ABA M decision and the referral of cases, is that something that is now being done routinely where the NLRB is waiting to see what happens as to this advisory opinion? Is it staying? That was my point in bringing up the Orlando case, Your Honor. They have made decisions, the NLRB has, regional directors have, and administrative law judges have. There is no staying going on. As far as I'm aware, there's absolutely no general policy of staying cases. Except in those cases, presumably, where it rests on . . . it's clearly not based on the six-factor test. It's based on just one test, and it's based on the fact that the NLRB is waiting to see what happens. Your Honor, that was . . . the D.C. Circuit characterized the decision that way. I don't believe that's an accurate characterization. I don't believe that's what any of the regional directors have done, and I don't believe it's what any of the administrative law judges have done. For instance, we had two regional director decisions on elections, directing elections, finding jurisdiction, with prime flight since then, one in Philadelphia, one in LaGuardia. The regional directors very carefully go through all six factors. It's not just how you weight those factors. When you look, say, at a question of control of business operations, that's one of the factors. You have to decide what is it that constitutes jurisdictionally important control. The Dobbs House Courts and some of the regional directors have stressed, for instance, that an independent contractor that operates in the marketplace, bidding for work as its own independent company with its own business policies and plans, that shows a lack of jurisdictionally significant control. That's in line with Reynolds and a number of the appellate cases under the Carrier Taxing Act and the other railway legislation. Some of the cases to which the employer refers sees something like the carrier specifying the nature of the work it wants performed as evidence of jurisdictionally significant control. It's not a question of which factors are you looking at, because I believe everybody is looking at the same factors. There's very much a question of what, among those factors, what's the priority and what you consider showing control and what you consider showing a lack of control. Did that help answer your question? Let's say that we were to affirm what the district court did, hypothetically, for the sake of argument, and that there then is a change in policy. What happens? There are several levels of answer to that. It is possible  that a decision would not really change anything in that regard. It is possible that the company would seek to withdraw recognition, saying, we were required to recognize you. Now we're not. There would be a legal argument over that. We would, of course, oppose it. What their status would be under the RLA, having recognized us, is basically unclear. There are no cases that really deal specifically with that fact pattern, if that's the way it developed. Thank you. Thank you, Your Honor. I think there appears to be a question of whether there actually has been a change in the NMB's test. The NMB continues to refer to six factors. The board continues to refer to six factors. Judge Kogan referred to six factors. The question is, has there actually been a change? In fact, many different participants in this process have identified that there has, in fact, been a change since 2013. Mr. Guerin, in fact, published an article documenting the history of the NMB's interpretation since 1980 through the present. He identified a change. The D.C. Circuit identified a change. Judge Kogan himself identified a change on page 8 of his opinion. He acknowledged, it appears to me, that there has been a change since 2013 and that the board is now ceding jurisdiction over circumstances where previously it took jurisdiction under the RLA. Despite the fact that there continues to be reference to the six factors, there has been an impactful change in how the NMB applies these six standards. That's what the D.C. Circuit found. We have not talked a lot about the substance of that change because, as the D.C. Circuit found, the issue here is the fact that the NMB and the board, the National Labor Relations Board, failed to explain that change. It's their obligation in the first instance to do that. That is now what is occurring. The National Labor Relations Board has sent the issue to the NMB and asked them. In its referral letters, and I should note that the three referral letters from the Labor Board to the NMB are attached as exhibits to our motion to hold the case in abeyance that we filed a month or two ago. I apologize. We probably should have filed a 28-J letter, but those are in the docket. They're exhibits there. You asked earlier when those were sent. I believe it was in May of this year. All three of those letters specifically refer to the D.C. Circuit's decision and say, in light of that decision, we're asking you, Mediation Board, to respond to the issues raised by the D.C. Circuit. The court asked earlier what would be the harm of holding this in abeyance. In fact, we did move to hold the case in abeyance. As opposing counsel noted, the negotiations are ongoing. There's no suggestion that the parties' negotiations have broken down. There has not been an unfair labor practice. For example, an unfair labor practice charge filed relating to the negotiations. They are ongoing. We believe, frankly, that there wouldn't be any harm to holding the case in abeyance. We suggested in our motion for abeyance, I can't remember the amount of time we suggested, maybe three months, maybe six months. Then the parties can come back at that point. If the Mediation Board hasn't issued a decision, then perhaps the case should proceed by that point. A temporary abeyance to see what happens, I think, does make sense. The counsel for the region also suggested or raised the issue of the scope of Judge Kogan's injunction and his elimination of negotiating over employment levels and hours. I think it's important to look at that limitation in the context of what Judge Kogan was doing. That's responding to the Board's suggestion of there's some sort of irreparable harm here because employees aren't seeing activity by the union. Do you agree that staffing levels and that issue is usually the subject of bargaining? I think it usually is, Your Honor, but I think also that the counsel for the Board acknowledged that that was a finding of fact here. It was a finding of fact by Judge Kogan that JetBlue has substantial control over the staffing levels. That was a fact finding by Judge Kogan. That would need to be reviewed under, I believe, the standard review for fact finding, which the Board has not shown was an improper fact finding by Judge Kogan. We also point out in our briefing . . . . . . that fact be considered in the context of the two parties' bargaining. That is, we've got a district court that has made a factual finding with respect to JetBlue's control, for lack of a better word, over staffing. Your Honor, I think it's important to recognize that Judge Kogan's injunction, it's only a provisional injunction. It doesn't prevent the parties ultimately, ultimately if the Board rules in favor of the union. At that point, Judge Kogan's injunction will go away and presumably they would be bargaining over the full scope of their relationship. It's a provisional remedy and it makes sense in light of the alleged harm that was presented in this case, and that is that the employees need to see some activity by the union. Well, there is negotiating. It may not be on the full scope of everything that the union would like, but in the context of the alleged irreparable harm, Judge Kogan determined that that was sufficient to address that. We believe that there's a proper limitation and again, it's a provisional limitation. Unless the Court has any further questions, we'll rest on our briefing. Thank you all for your good arguments. The Court will reserve decision. Final case is on submission. The Clerk will adjourn Court.